# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 14-129-MWB |
| Plaintiff, | |
| vs. | **MEMORANDUM OPINION AND ORDER REGARDING THE PARTIES' EVIDENTIARY MOTIONS** |
| MATTHEW ROBBINS, | |
| Defendant. | *FILED UNDER SEAL* |

_____

## TABLE OF CONTENTS

I.   **INTRODUCTION**............................................................................ *2*
   A.   *Procedural Background* ......................................................... *2*
   B.   *Factual Background* .............................................................. *5*
II.  **LEGAL ANALYSIS** ................................................................... *7*
   A.   *Applicable Evidentiary Standards* ....................................... *7*
      1.   *Relevance versus prejudice* ......................................... *7*
      2.   *Limiting instructions and limitations on evidence* ................... *9*
   B.   *Application Of The Standards*............................................ *10*
      1.   *The prosecution's Second Motion In Limine* .................... *10*
         a.   *References to a "sawed-off shotgun"* ...................... *10*
         b.   *References by defense counsel to his personal life* ........................................................... *12*
         c.   *Eliciting from Mr. Kostol that he was previously called as a defense witness*...................... *16*
      2.   *Robbins's motion to exclude references to "James Booher" or "Jim Bob"*................................................ *17*
III. **CONCLUSION** ........................................................................ *19*

## I.     INTRODUCTION
### A.     Procedural Background

This case is before me on evidentiary motions prior to a retrial, scheduled to begin on August 31, 2015.  Prior to defendant Mathew Robbins's first trial, which began on April 20, 2015, Robbins was charged in a Third Superseding Indictment (docket no. 66), with two firearms offenses.  **Count 1** charged Robbins with possession of a stolen firearm.  More specifically, this count charged that, from on or about April 18, 2014, through June 3, 2014, Robbins knowingly possessed a stolen firearm, namely, a Kimber .45 caliber handgun, knowing or having reasonable cause to believe that the firearm was stolen, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2).  **Count 2** charged Robbins with being a drug user and felon in possession of a firearm and ammunition.  More specifically, this count charged that, from on or about April 18, 2014, through June 3, 2014, Robbins, then being an unlawful user of methamphetamine and marijuana and having previously been convicted of one or more felony offenses, knowingly possessed the same Kimber .45 caliber handgun charged in **Count 1**, as well as sixteen Hornady .45 caliber hollow point bullets; six Winchester 12-gauge slug shotgun shells; and one Federal 12-gauge birdshot shotgun shell, in violation of 18 U.S.C. §§ 922(g)(1) and (3) and 924(a)(2).  Prior to Robbins's first trial, I entered a Sealed Memorandum Opinion And Order Regarding The Prosecution's Rule 404(B) And 609(B)(2) Notice And Motion In Limine For Evidentiary Rulings (First Evidentiary Ruling) (docket no. 59).  Robbins's first trial ended in a mistrial on April 24, 2015, when the jury hung on a verdict.  A retrial was eventually set to begin on August 31, 2015.

2

In the interim since Robbins's first trial, a Fourth Superseding Indictment (docket no. 127) was filed, on July 17, 2015. The Fourth Superseding Indictment added an additional firearm, a Sigarms .45 caliber handgun, as an allegedly stolen firearm that Robbins allegedly possessed, in **Count 1**, and as an item that he allegedly illegally possessed, in **Count 2**. The Fourth Superseding Indictment also added two entirely new charges. **Count 3** charges Robbins with being a drug user (methamphetamine and marijuana) and felon (based on the same felonies alleged in **Count 2**) in possession of firearms, this time, from February 23, 2014, through about April 2014, and involving possession of a Ruger .22 caliber pistol and an Iver Johnson 12-gauge shotgun, in violation of 18 U.S.C. §§ 922(g)(1) and (3) and 924(a)(2). **Count 4** charges Robbins with possession of an unregistered firearm. More specifically, this count charges that, from January 2014 through on or about June 3, 2014, Robbins knowingly possessed a firearm not registered to him in the National Firearms Registration and Transfer Record, namely, a 12-gauge shotgun of unknown manufacture, which had a barrel of less than 18 inches in length and an overall length of less than 26 inches, in violation of 26 U.S.C. §§ 5845(a), 5861(d), and 5871.[1]

_____

[1] I note that § 5845(a) defines a "firearm," in the chapter of the United States Code establishing the National Firearms Registration and Transfer Record, as meaning, *inter alia*, "(1) a shotgun having a barrel or barrels of less than 18 inches in length; [and] (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length." I note that § 5861(d) makes it unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." I also note that § 5871 establishes penalties for any person who violates this chapter of the United States Code.

Although I take no legal position on the matter at this time, I find it odd that **Count 4** of the Fourth Superseding Indictment does not identify one of the statutes

3

In anticipation of Robbins's retrial, the prosecution filed its Second Motion In Limine For Evidentiary Rulings (docket no. 133) on July 29, 2015, and Robbins filed his Motion In Limine (docket no. 137) on August 10, 2015. In its Second Motion In Limine, the prosecution seeks the following rulings: (1) that prosecution witnesses may refer to the firearm charged in **Count 4** of the Fourth Superseding Indictment as a "sawed-off shotgun"; (2) that defense counsel cannot reference his personal information during trial, including during *voir dire*, opening statements, and closing arguments; and (3) that the prosecution may elicit from Dan Kostol, whom the prosecution intends to call as a witness at Robbins's retrial, that Robbins called Kostol as a witness in a prior proceeding related to this case. In his Motion In Limine, Robbins seeks to exclude from the prosecution's case-in-chief all references to "James Booher" or "Jim Bob." I now enter this ruling on these evidentiary motions.

---

allegedly violated by Robbins's possession of the shotgun as 26 U.S.C. § 5841. I find it odd, because § 5841 is the provision that actually *requires* registration of a short shotgun, as defined in either § 5845(a)(1) or (2), in the National Firearms Registration and Transfer Record, by a manufacturer, importer, or maker, and *requires* a transferor to register to the transferee each such firearm transferred. *See*, *e.g., United States v. Kilburg*, ___ F. App'x ___, 2015 WL 4032164, *1 (8th Cir. July 2, 2015) (explaining that the defendant pleaded guilty to "one count of possession of unregistered National Firearms Act weapons, in violation of 26 U.S.C. §§ 5861(d), 5841, and 5871"); *but see United States v. Thurmond,* 782 F.3d 1042, 1043 (8th Cir. 2015) (explaining that the defendant entered a conditional guilty plea "to possession of an unregistered (short-barreled) firearm in violation of 26 U.S.C. §§ 5845(a), 5861(d), and 5871"); *United States v. Ardrey*, 739 F.3d 1189, 1190 (8th Cir. 2014) (explaining that the defendant was found guilty of "possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d)").

### B.  Factual Background

In my First Evidentiary Ruling, I laid out a fairly extensive factual background, mostly pertaining to Robbins's long history of criminal convictions punishable by more than one year of imprisonment.  I find that only part of that factual background is necessary, now, but some additional facts are also relevant.

Specifically, on or about April 18, 2014, Robbins and B.L. allegedly burglarized a house in Cedar Rapids, Iowa, and stole two firearms, the Kimber .45 caliber handgun, serial number K389332, and the Sigarms .45 caliber pistol, serial number GS66096, which Robbins is charged with illegally possessing in **Counts 1** and **2** of the Fourth Superseding Indictment.  The prosecution represents that it also has evidence that Robbins possessed a sawed-off shotgun in 2013-2014, including evidence from witnesses who saw him with it, saw it in his house, or saw him shooting it outside of his house.  This is the unregistered firearm charged in **Count 4** of the Fourth Superseding Indictment.

In late May 2014, Robbins and others purchased methamphetamine from James (Jim) Booher (also known as "Jim Bob") at a local strip bar.  A few hours later, Robbins allegedly lured Booher to his rental home in rural Ely, Iowa, ostensibly to purchase more methamphetamine, but then Robbins and others used a sawed-off shotgun that Robbins possessed to rob methamphetamine and cash from and to kill Booher.  Robbins and others allegedly disposed of and concealed Booher's body, removed carpet, other furniture, and "nearly everything else not nailed down" from Robbins's rental home, burned those furnishings in a large fire, and attempted to clean the walls and other surfaces of the rental home with bleach and other cleaners.  Booher's body has not been found.  At some point in early June 2014, Josh Gilbert came to Robbins's farm looking for Booher.  Gilbert testified at Robbins's first trial that, while he was at the farm asking about Booher, Robbins displayed what appeared to Gilbert to be a .45 caliber handgun.  Danielle Busch,

5

one of Robbins's girlfriends, testified at Robbins's first trial that, after Gilbert left, Robbins came upstairs with a handgun that he then disassembled.

On June 3, 2014, law enforcement officers investigating the disappearance of Booher searched Busch's home, where Robbins was staying at the time. During the search, officers found Robbins and Busch in bed together with drug use paraphernalia in the bedroom and elsewhere in the house. In a closet, officers found a loaded Kimber .45 caliber handgun, which was one of the firearms that had been stolen during the burglary in April 2014. Again, this is one of the firearms that Robbins is charged with illegally possessing in the first two counts of the Fourth Superseding Indictment.

On June 11, 2014, law enforcement officers searched Robbins's rental home, but Robbins had moved out of the home a few days before, after burning the furnishings. Officers found the gun case for the Kimber firearm outside Robbins's residence. A forensic dig of the burn pile at Robbins's residence revealed shell casings of .45 caliber Blazer brand ammunition.

During Robbins's first trial, both during voir dire and in closing arguments, Robbins's defense counsel made references to his own personal life history, including his farming background and service in the Marine Corps, and the personal life histories of his wife and his brother. The prosecution represents that it hesitated to object to these references in front of the jury, because of a concern that doing so would draw more attention to the references.

During Robbins's first trial, Robbins called Dan Kostol as a witness to testify that he had seen Robbins shoot pellet guns, but had never seen him with a firearm. Robbins points out that Kostol testified pursuant to a subpoena, not voluntarily. The prosecution represents that it now intends to call Kostol as a witness to testify that he took possession of two firearms (the ones charged in **Count 3** of the Fourth Superseding Indictment) from Robbins's house, at Robbins's request, and stored them at Kostol's house until Robbins

6

instructed him to surrender them to Brandon Lee.  When Lee arrived to retrieve the firearms, Kostol had been arrested and was in jail, but Kostol had told his wife to surrender the guns to Lee, and she did so.

## II.    LEGAL ANALYSIS

I will begin my analysis of the evidentiary issues raised in the present evidentiary motions by summarizing the standards for admissibility of evidence implicated by all or most of the categories of evidence at issue.

### A.    Applicable Evidentiary Standards

Most of the evidentiary issues now before me are presented in terms of the balance of their relevance against their potential for unfair prejudice.  Therefore, I begin my summary of standards for admissibility of evidence with the standards concerning relevance versus prejudice.

#### 1.    Relevance versus prejudice

Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence that "(a) . . . has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Rule 402 provides that relevant evidence is generally admissible, but irrelevant evidence is not.  Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

7

FED. R. EVID. 403. The Eighth Circuit Court of Appeals "give[s] great deference to the district court's Rule 403 determinations." *United States v. Battle*, 774 F.3d 504, 514 (8th Cir. 2014); *United States v. Muhlenbruch*, 634 F.3d 987, 1001 (8th Cir. 2011) ("We review the district court's decision not to exclude evidence under Rule 403 for an abuse of discretion."); *United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007) ("Under Rule 403, district courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of discretion." (citing *United States v. Henderson*, 416 F.3d 686, 693 (8th Cir. 2005), *cert. denied*, 546 U.S. 1175 (2006))).

More specifically, as to Rule 403, the Eighth Circuit Court of Appeals has explained,

> [U]nder Rule 403, the [challenged evidence's] probative value must be *substantially* outweighed by *unfair* prejudice. "Evidence is not unfairly prejudicial because it tends to prove guilt, but because it tends to encourage the jury to find guilt from improper reasoning. Whether there was unfair prejudice depends on whether there was an undue tendency to suggest decision on an improper basis." *United States v. Farrington*, 499 F.3d 854, 859 (8th Cir. 2007) (quotations omitted).

*Muhlenbruch*, 634 F.3d at 1001 (emphasis in the original); *Myers*, 503 F.3d at 681 ("Rule 403 'does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis.'" (quoting *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30 (1983)). The Advisory Committee Notes to Rule 403 explain that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Bell*, 761 F.3d 900, 912 (8th Cir. 2014) (same). Unfairly prejudicial evidence, inviting a decision on an improper basis, includes evidence that is "'so inflammatory on [its] face as to divert the

jury's attention from the material issues in the trial.'" *United States v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005) (quoting *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995)); *accord United States v. Young*, 753 F.3d 757, 768-69 (8th Cir. 2014) ("[T]he district court violated Federal Rule of Evidence 403 because the testimony was so inflammatory that its resulting unfair prejudice outweighed its probative value.").

### 2.     *Limiting instructions and limitations on evidence*

When evidence may otherwise be inadmissible, because it is unduly prejudicial, the Eighth Circuit Court of Appeals and the Federal Rules of Evidence recognize that a limiting instruction on the proper uses of that evidence may mitigate potential prejudice from such evidence and allow it to be admitted. *See, e.g, Valadez v. Watkins Motor Lines, Inc.*, 758 F.3d 975, 982 (8th Cir. 2014) ("To the extent [the parties] were concerned about improper prejudice, a limiting instruction would have addressed those concerns." (citing FED. R. EVID. 105)); *United States v. Cowling*, 648 F.3d 690, 699 (8th Cir. 2011) ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted."); *United States v. Young*, 644 F.3d 757, 761 (8th Cir. 2011) (concluding that the district court did not abuse its discretion in admitting evidence for the limited purpose set forth in its instruction); *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose). The court has also recognized that limiting the amount of evidence, while excluding evidence that might prejudicially divert the jury's attention from the issues in the case, also mitigates any potential for unfair prejudice. *See United States v. Lemon*, 239 F.3d 968, 972 (8th Cir. 2001) (holding that, where the district court admitted a limited amount of gang-related evidence that was relevant to the defendant's "mere presence" defense,

but excluded evidence of his drive-by shooting conviction, which might have prejudicially diverted the jury's attention from the constructive possession issues central to the case, the district court had not abused its discretion in admitting the limited gang-related evidence).

### B.    Application Of The Standards

I will consider separately, in turn, each category of evidence at issue in the evidentiary motions presently before me.  I begin with evidence put at issue in the prosecution's Second Motion In Limine.

### 1.    The prosecution's Second Motion In Limine
#### a.    References to a "sawed-off shotgun"

The prosecution's first request is for a ruling that prosecution witnesses may refer to the firearm charged in **Count 4** of the Fourth Superseding Indictment as a "sawed-off shotgun."   The prosecution acknowledges that, in my First Evidentiary Ruling, I concluded that, "to limit any undue prejudice, any references to or arguments about [Robbins's alleged possession of a short shotgun] must describe the weapon in Robbins's possession as a 'firearm,' not as a 'sawed-off shotgun,' and any pertinent witnesses must be warned accordingly."  First Evidentiary Ruling at 23.  The prosecution now argues that, because Robbins is charged in **Count 4** with possession of an unregistered short shotgun, witnesses should be allowed to describe the weapon as a "sawed-off shotgun."

Robbins responds that the potential prejudicial effect of using the term "sawed-off shotgun" is still present.  He argues that "sawed-off shotguns" are considered highly dangerous offensive weapons, because they can cause a large amount of damage over a larger area than a bullet from a handgun, and they are associated with violence and criminal conduct.  Thus, Robbins argues that references to a "sawed-off shotgun" are likely to inflame the passions of the jury.  Robbins argues that the prosecution should be

10

limited to referring to the firearm in question as a "shotgun" and presenting evidence about its length from witnesses with personal knowledge, but precluded from using a slang term that has serious and substantial negative connotations.

The prosecution has not convinced me that it is either factually accurate or otherwise "relevant" to refer to the shotgun charged in **Count 4** as a "sawed-off shotgun." *See* FED. R. EVID. 401 and 402. The pertinent statute, 26 U.S.C. § 5845(a), defines a "firearm," in pertinent part, to mean "(1) a shotgun having a barrel or barrels of less than 18 inches in length; [and] (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length." The term "sawed-off" is conspicuous by its absence from either of these definitions. A shotgun "having a barrel . . . of less than 18 inches in length" has not necessarily been "sawed-off." *See* 26 U.S.C. § 5845(a)(1). Also, while a shotgun may be "modified" by being "sawed-off" to fit within either the overall length restriction or the barrel length restriction, that is not necessarily the method of "modification." *See* 26 U.S.C. § 5845(a)(2). Furthermore, the prosecution has not, at least so far, pointed to any evidence allowing me—or anyone else—to determine whether the shotgun that Robbins allegedly possessed originally had a barrel less than 18 inches in length or whether and how it was "modified," either to have an overall length less than 26 inches, or to have a barrel less than 18 inches in length, or both. *See* 26 U.S.C. § 5845(a)(1) and (2). Indeed, it would be possible to "saw off" a shotgun, and *still* not fit within the definition of a "firearm" in either § 5845(a)(1) or § 5845(a)(2). In short, whether or not the shotgun was "sawed-off" has essentially no probative value on the questions of whether the shotgun required registration or whether Robbins illegally possessed it.

Turning to a Rule 403 balancing of probative value against prejudice, it would take very little potential prejudice to "substantially outweigh" the essentially non-existent relevance of referring to the shotgun at issue as "sawed-off." *See* FED. R. EVID. 403;

11

*Muhlenbruch*, 634 F.3d at 1001; *Myers*, 503 F.3d at 681. As Robbins asserts, references to the shotgun at issue as "sawed off" would invite a decision about whether or not the firearm required registration and whether or not Robbins illegally possessed it on an improper, emotional, and inflammatory basis. FED. R. EVID. 403, Advisory Committee Notes; *Bell*, 761 F.3d at 912; *Young*, 753 F.3d at 768-69. References to a "sawed-off shotgun" could suggest to jurors that the firearm was especially dangerous and suited only for violent, criminal behavior, inviting a determination of guilt on this basis, not on the basis of evidence that the firearm required registration and evidence of Robbins's illegal possession of it.

This prejudice can be properly mitigated by limiting how the shotgun is identified, while excluding the prejudicial inferences from calling it a "sawed-off shotgun." *Cf. Lemon*, 239 F.3d at 972. References to the shotgun at issue as a "shotgun" or even as a "short shotgun" have some probative value, as more nearly related to the characteristics requiring registration, but references to "short shotgun" in the absence of any clarification of a witness's knowledge about the barrel length or overall length should be kept to a minimum.

Therefore, the part of the prosecution's Second Motion In Limine requesting a ruling that prosecution witnesses may refer to the firearm charged in **Count 4** of the Fourth Superseding Indictment as a "sawed-off shotgun" is denied.

### b. *References by defense counsel to his personal life*

Next, the prosecution seeks a ruling that defense counsel cannot reference his personal information or information about his family members during trial, including during *voir dire*, opening statements, and closing arguments. In its brief, the prosecution quotes several instances during *voir dire* in Robbins's first trial in which defense counsel gave rather detailed descriptions of his and his wife's biographies and an instance during closing arguments in Robbins's first trial when defense counsel discussed his brother's

12

biography, including his imminent ordination as a Lutheran minister, and his brother's suggestion about how to judge the credibility of people. The prosecution argues that none of these personal facts were part of the record or relevant to any aspect of the trial, but were simply intended to ingratiate defense counsel to the jurors. The prosecution argues that courts have substantial discretion to control *voir dire* and closing arguments, and that I should use that discretion, here, to exclude the kinds of personal references that defense counsel made in Robbins's first trial.

Robbins argues that defense counsel's references to his and his family's personal histories were appropriate to try to put jurors at ease about revealing personal information of their own during *voir dire* and to establish rapport with the jurors. Robbins argues that the prosecution has cited no authorities that would prohibit such references.

There can be no serious dispute that a trial judge has broad discretion to control the questions asked by or other conduct of counsel during jury selection or to control the parties' opening statements and closing arguments. *See*, *e.g.*, *United States v. Patterson*, 684 F.3d 794, 798 (8th Cir. 2012) ("'A trial court is vested with broad discretion in controlling closing arguments and we will reverse only on a showing of abuse of discretion.'" (quoting *United States v. Coutentos*, 651 F.3d 809, 821 (8th Cir. 2011), with internal quotation marks omitted)); *Smith v. Tenet Healthsystems SL, Inc.*, 436 F.3d 879, 884 (8th Cir. 2006) ("District courts have broad discretion to determine the scope of voir dire. [*Ratliff v. Schiber Truck Co., Inc.*, 150 F.3d 949,] 956 [(8th Cir. 1998)]. Voir dire is proper provided that there is an adequate inquiry to determine any juror bias or prejudice. *See Nanninga v. Three Rivers Elec. Coop.*, 236 F.3d 902, 906–07 (8th Cir. 2000)."). Some of the factors relevant to the court's exercise of such discretion are the nature, extent, and cumulative effects of any improprieties and the possible effect of any curative action by the court. *See Patterson*, 684 F.3d at 798; *see also United States*

13

*v. Collins*, 642 F.3d 654, 657 (8th Cir. 2011) (considering whether the remarks are improper and whether they will prejudice the right to a fair trial).

There is some merit to Robbins's contention that counsel's references to his own personal history may help put prospective jurors more at ease about answering questions about their own personal histories during *voir dire*. There is also some merit to his contention that establishing some rapport with jurors is a valid goal of *voir dire*. On the other hand, there is a point at which excessive references by counsel to his or her personal history or the personal histories of counsel's family members would cross a line into attempting to ingratiate counsel to the jurors, or just to make counsel "likeable," so that jurors will look more favorably on the party counsel represents, regardless of the evidence. Such excessive references have nothing to do with an adequate inquiry to determine any juror bias or prejudice. *See Smith*, 436 F.3d at 884 (describing the appropriate purpose of *voir dire*). Rather, they are an attempt to generate bias in favor of the party counsel represents, which is improper. *Cf.* ABA Criminal Justice Section Standards, Defense Function, Standard 4-7.3(b), Relations With Jury ("Defense counsel should treat jurors with deference and respect, avoiding the reality or appearance of currying favor by a show of undue solicitude for their comfort or convenience."). The line is difficult to draw in the abstract, in part, because it may be the cumulative effect of repeated references to counsel's personal history or counsel's family members that becomes problematic, rather than any single reference. Thus, the solution is not a pre-trial bar, but careful and constant scrutiny during *voir dire*. *Smith*, 436 F.3d at 884 ("District courts have broad discretion to determine the scope of voir dire.").

In closing arguments, analogies to counsel's own life, rather than the evidence related to the defendant or other actors in the case; appeals to consider external standards, rather than the standards stated in the court's jury instructions; or suggestions that jurors consider counsel's opinions or the opinions of outsiders or some "higher authority,"

rather than a juror's own opinion derived from the evidence in the case and the juror's experience and common sense, and the opinions of other jurors, are inappropriate. *See, e.g., Gilster v. Primebank*, 747 F.3d 1007, 1011 (8th Cir. 2014) (finding improper and prejudicial counsel's remarks, which were not "minor aberrations made in passing," about experiences in her own life, and which were not facts in evidence in the case, were plainly calculated to arouse the jury's sympathy and aimed at enhancing her client's credibility); *United States v. Thomas*, 664 F.3d 217, 224-25 (8th Cir. 2011) (finding improper a prosecutor's statement, "if this isn't a first degree murder case, ladies and gentlemen, I don't know what is"). Indeed, the Eighth Circuit Court of Appeals has stated, "'[T]he cardinal rule of closing argument [is] that counsel must confine comments to evidence in the record and to reasonable inferences from that evidence.'" *Id.* (quoting *Whittenburg v. Werner Enters., Inc.*, 561 F.3d 1122, 1128-29 (10th Cir. 2009)). Thus, it is not self-evident that even a jury instruction that statements, arguments, questions, and comments by the lawyers are not evidence will suffice to avoid or mitigate possible prejudice from such comments. *See id.* Again, the best solution may not be a pre-trial bar to certain kinds of comments by lawyers, but careful and constant scrutiny by the court during closing arguments, to distinguish between "minor aberrations made in passing" and frequent, inappropriate departures from the evidence in the record and reasonable inferences from that evidence.

Thus, the part of the prosecution's Second Motion In Limine seeking a ruling that defense counsel cannot reference his personal information or information about his family members during trial, including during *voir dire*, opening statements, and closing arguments, is denied. Nevertheless, counsel are cautioned to consider the need and extent of any such references during *voir dire* and opening statements, and counsel are cautioned to maintain the focus in closing arguments on the evidence in the record and the reasonable inferences from that evidence.

### c. Eliciting from Mr. Kostol that he was previously called as a defense witness

Finally, the prosecution seeks an order that it may elicit from Dan Kostol, whom the prosecution intends to call as a witness at Robbins's retrial, that Robbins called Kostol as a witness in a prior proceeding related to this case. The prosecution argues that it should be able to elicit such information, because it goes to Kostol's credibility or bias, where it shows the relationship between Kostol and Robbins. The prosecution contends that unfair prejudice can be avoided by referring to Kostol's testimony in "a prior proceeding" or "a prior proceeding related to this case, rather than to his testimony "in the prior trial."

Robbins argues that the fact that he called Kostol in the prior trial has little or no probative value on Kostol's credibility, because Kostol testified pursuant to a subpoena, not voluntarily. On the other hand, Robbins argues that, if the prosecution is allowed to elicit testimony that he previously called Kostol as a witness, he should be allowed to elicit testimony that Kostol testified pursuant to a subpoena, not voluntarily.

For the second time, the prosecution has not convinced me that evidence that it seeks leave to introduce is "relevant." *See* FED. R. EVID. 401 and 402. The facts that Robbins called Kostol in any prior proceeding and that Kostol testified in a prior proceeding, especially pursuant to a subpoena, shed no light on the relationship between Kostol and Robbins or Kostol's credibility. Consequently, it would take very little potential prejudice to "substantially outweigh" the essentially non-existent relevance of the fact that Robbins called Kostol in a prior proceeding. *See* FED. R. EVID. 403; *Muhlenbruch*, 634 F.3d at 1001; *Myers*, 503 F.3d at 681. Such prejudice, here, arises from unwarranted inferences that Robbins considered any testimony Kostol might give to be trustworthy, the potential for confusion of the issues about the circumstances and reasons for Kostol's prior testimony, and the potential for misleading the jurors about the

16

circumstances under which Kostol provided prior testimony.  *See* FED. R. EVID. 403
(permitting evidence to be excluded if it is unfairly prejudicial, confuses the issues, or is
misleading).  If it becomes appropriate to impeach Kostol with his prior testimony, I
agree with the parties that references to Kostol's testimony in "the defendant's prior trial"
or even "in a prior proceeding related to this case" would be potentially unfairly
prejudicial, but that prejudice can be avoided by referring to Kostol's testimony as given
"in a prior proceeding."

Therefore, the part of the prosecution's Second Motion In Limine seeking a ruling
that the prosecution may elicit from Dan Kostol, whom the prosecution intends to call as
a witness at Robbins's retrial, that Robbins called Kostol as a witness in a prior
proceeding related to this case is denied.

### 2.    *Robbins's motion to exclude references to "James Booher" or "Jim Bob"*

In his Motion In Limine, Robbins seeks to exclude from the prosecution's case-
in-chief all references to "James Booher" or "Jim Bob."  Robbins asserts that, since his
first trial, there have been several articles and broadcasts in local media about law
enforcement officers' search for Mr. Booher and news coverage of the forensic dig at the
burn pit at Robbins's farm, which ostensibly included information that the forensic team
was searching for possible human remains.  Robbins contends that any information about
"James Booher" or "Jim Bob" is unduly prejudicial, because it may invite speculation
by the jurors about what role Robbins played in the missing man's disappearance.
Robbins argues that information about Mr. Booher's disappearance or the search for him
does nothing to prove any element of any charge against him.

The prosecution responds that Robbins's Motion is overbroad and that his concerns
are not supported by the record or the case law that he cites.  More importantly, the
prosecution contends that it does not intend to introduce at the retrial all of the evidence

17

on this matter that it introduced at the first trial.  The prosecution represents that it will not call at all two witnesses who testified in the first trial, Travis Vomacka and Officer Kearney.  The prosecution also represents that it does not intend to elicit testimony from Danielle Busch or other witnesses about Booher's involvement with or sale of methamphetamine.  Rather, the prosecution represents that it intends to offer the testimony of Josh Gilbert that he saw Robbins with a .45 caliber handgun when he went to Robbins's house at about 2:00 a.m. one morning in June 2014 looking for Booher and testimony of Danielle Busch that she saw Robbins with a .45 caliber handgun after Gilbert's visit.  The prosecution argues that the fact that Gilbert was looking for Booher is important to explain the strange timing of his visit to Robbins's residence.  The prosecution argues that it is insufficient to refer to Booher simply by a generic term, such as Gilbert's "friend," because Booher's name will corroborate Gilbert's and Busch's testimony about seeing Robbins with a gun if it is clear that Gilbert and Busch are talking about the same incident.  The prosecution argues that there is little likelihood of prejudice, because there will be no need to offer evidence about Booher being murdered or Robbins's alleged responsibility for or connection to that murder, and evidence about the forensic dig will be limited to the discovery of shell casings in the fire pit.  The prosecution also contends that Robbins's counsel is free to elicit information from prospective jurors about their knowledge, if any, of Booher, if Robbins has concerns that prospective jurors could be influenced by the publicity to which he cites.

I agree with the prosecution that evidence of Booher's name and nickname do have probative value to corroborate that witnesses are testifying about the same incident (or incidents) in which Robbins allegedly possessed a firearm or firearms.  *See* FED. R. EVID. 401 and 402.  The very limited evidence relating to Booher that the prosecution represents it intends to introduce in the retrial also lessens the likelihood of unfair prejudice, such as speculation about whether Robbins had any involvement in Booher's disappearance.

18

FED. R. EVID. 403; *Lemon*, 239 F.3d at 972. The prosecution is also correct that Robbins can probe the extent to which prospective jurors are aware of news coverage related to Booher, but that, so far, Robbins has nothing but speculation that any prospective jurors might be tainted with prejudicial knowledge about Booher or Robbins's possible connection to him or his disappearance.

Therefore, Robbins's Motion In Limine is denied without prejudice to reassertion, if Robbins can demonstrate on a more reliable record that any reference to "Booher" or "Jim Bob" is potentially unfairly prejudicial.

## III.    CONCLUSION

Upon the foregoing,

1.      The prosecution's July 29, 2015, Second Motion In Limine For Evidentiary Rulings (docket no. 133) is **denied**. More specifically,

a.      The part of the prosecution's Second Motion In Limine requesting a ruling that prosecution witnesses may refer to the firearm charged in **Count 4** of the Fourth Superseding Indictment as a "sawed-off shotgun" is **denied**;

b.      The part of the prosecution's Second Motion In Limine seeking a ruling that defense counsel cannot reference his personal information or information about his family members during trial, including during *voir dire*, opening statements, and closing arguments, is **denied**, but all counsel are cautioned to abide by the guidelines stated, above; and

c.      The part of the prosecution's Second Motion In Limine seeking a ruling that the prosecution may elicit from Dan Kostol that Robbins called Kostol as a witness in a prior proceeding related to this case is **denied**. If it becomes appropriate to impeach Kostol with his prior testimony, that testimony may only

be identified as "testimony in a prior proceeding," but not as "testimony in a prior trial" or "testimony in a related proceeding."

2.    Defendant Robbins's August 10, 2015, Motion In Limine (docket no. 137) is **denied** *without prejudice* to reassertion, if Robbins can demonstrate on a more reliable record that any reference to "Booher" or "Jim Bob" is potentially unfairly prejudicial.

IT IS FURTHER ORDERED that, to avoid exposure of potential jurors to information about excluded evidence, this ruling shall be sealed until ten days after completion of trial or any guilty plea, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

**IT IS SO ORDERED**.

**DATED** this 25th day of August, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

20